51 CCPA

## Application of Glenn T. SEABORG.
### Patent Appeal No. 7060.

United States Court of Customs
and Patent Appeals.
March 19, 1964.

————◆————

Roland A. Anderson and John A. Horan, U. S. Atomic Energy Commission, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C., (Joseph Schimmel, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

SMITH, Judge.

The specification of the application [1] and the claims at issue relate to a new element having atomic number 96,[2] also known as Curium (Cm), to isotopes thereof, and to methods of producing and purifying said elements. Two isotopes, curium 240 and curium 242, are disclosed, as well as two general methods of synthesis: 1) the bombardment of isotopes of the actinide group of heavy metals (the transuranic elements of atomic numbers 90 through 96) with charged nuclear particles, exemplified by the bombardment of plutonium 239 with helium ions in a cyclotron and 2) the bombardment of the same type of isotope with uncharged nuclear particles, exemplified by the bombardment of americium 241 in a neutronic reactor of the pile type. Examples of each method are disclosed, and it is indicated that the most convenient method of synthesis is by the neutron-irradiation of heavy metal isotopes, such as americium 241, plutonium 239, and uranium 238. The reactor used for the purpose is said to be that described in Fermi et al. application, Serial No. 568,904, filed December 19, 1944, which issued as patent No. 2,708,656.

The amount or percentage of the isotope of element 96 in the transuranic fraction is controlled by varying the time of bombardment, the time of aging subsequent to bombardment, or both. The curium is recovered from the irradiated mass by dissolution in sulfuric acid, followed by evaporation of the solution to dryness, re-solution of the sulfate in nitric acid, and precipitation of the curium from solution as a fluoride.

Of the five claims on appeal, two are directed to the product, element 96 (claim 1), and an isotope thereof of mass number 242 (claim 2), while the other three are directed to the process of producing the isotope of element 96 by bombardment of plutonium 240 (claim 28), or plutonium 239 (claim 30), or americium 241 (claim 31) with neutrons, aging the bombarded mass, and recovering the curium 242.

The following references are relied upon:

| | | |
|---|---|---|
| Fermi et al. | 2,708,656 | May 17, 1955 |
| Swiss patent | 233,011 | Oct. 2, 1944 |

---

[1]. Serial No. 75,064, filed February 7, 1949, entitled "Element 96 and Compositions Thereof."

[2]. As appellant states in his specification, "The expression 'element 96,' when used throughout this specification and claims, designates the element having atomic number 96, also known as curium, having the symbol Cm."

Smyth Report, "A General Account of the Development of Methods of Using Atomic Energy for Military Purposes under the Auspices of the U. S. Government," Government Printing Office, August 1945. (Release date Aug. 11–12, 1945). Pages 26, 41, and 94–99.

McMillan et al., Physical Review, Vol. 57 (1940). Pages 1185–86.

The issues before the court in this appeal are: 1) the propriety of the rejection of claims 1 and 2 as fully met by the Fermi et al. patent and the Smyth publication; and 2) the propriety of the rejection of claims 28, 30 and 31 as unpatentable over the Fermi et al. patent and the Smyth publication, in view of the McMillan et al. publication.

Product claims 1 and 2, like the product claims in companion appeal PA 7061 were rejected under the "doctrine of inherency" because of the inference that such products would inherently be produced by processes of the prior art.

The addition of the Smyth report to Fermi in rejecting product claims 1 and 2 does not affect this ground of rejection. The Smyth report, published August 1945, is the official report of the development of the atomic bomb under the auspices of the United States Government during the period 1940–1945. It reports that a reactor was built and became operative on December 2, 1942. The power level was one-half watt which, on December 12, was raised to 200 watts. It also reports that other reactors were built and operated to produce plutonium. One such reactor is described in the Fermi et al. patent. The maximum amount of curium that can be produced by operation of a reactor containing a given amount of uranium fuel can be calculated by one skilled in the art. Such calculations, appellant asserts, show that if the original reactor described in the Smyth report were operated continuously for one year at one-half watt power, the odds against a single atom of curium 242 being present in the reactor are greater than 1,000,000,000,000 to 1 (actually one chance in $8 \times 10^{13}$). The chance that one atom of curium 242 would be present in the reactor if operated continuously for one year at 200 watts is 1 in 50. The Smyth report does not mention curium, and it seems clear from the above calculations that curium could not have been produced in the original reactor.

If the statements in Fermi et al. are accepted as factual on the basis of the Smyth Report, appellant asserts (and the solicitor does not deny) the maximum amount of curium 242 that could have been produced in the Fermi et al. reactor operated for 100 days at 500 kilowatts power can be calculated to be $6.15 \times 10^{-13}$ gram. Thus appellant asserts that the reactor could have produced no more than one one-thousand-billionth of a gram of curium 242, and this one one-thousand-billionth of a gram would have been distributed throughout forty tons of intensely radioactive uranium reactor fuel. This amount, of an unknown, unconcentrated isotope, if present, would have been undetectable.

Under these circumstances and for the reasons more fully set forth in our opinion in companion appeal PA 7061, the rejection of claims 1 and 2 is reversed.

This leaves for further consideration the rejection of process claims 28, 30 and 31.

Claim 28 is the broadest of the three process claims on appeal and is directed to a process of producing curium 242 by bombarding $Pu^{240}$ with neutrons until a substantial amount of $Pu^{241}$ is formed, then aging, whereby $AM^{241}$ is produced, bombarding the $AM^{241}$ with neutrons to produce $AM^{242}$, aging the $AM^{242}$, whereby $CM^{242}$ is produced, and recovering the $Cm^{242}$. Claims 30 and 31 add to the basic process of claim 28 specific procedures for recovering the $Cm^{242}$ produced in the bombardment and aging operations.

These claims were held to be unpatentable over Fermi et al. in view of the McMillan publication, for the reason that the specific procedure set forth in claims 30 and 31 for recovering the

curium content of the irradiated material is conventional. It is the solicitor's position that the steps of the claimed process down to the step of recovering the products of irradiation is what inherently occurs in the operation of the Fermi reactor. McMillan is said to utilize the claimed recovery procedure for transuranic element 93. Operating McMillan's recovery procedure with Fermi's 100 days irradiated product will bring down not only element 93 but also element 96.

In order to produce curium in the operation of a nuclear reactor such as that of Fermi et al., it appears that it is necessary to operate the reactor for such a period of time and with such an intensity of neutron irradiation that the uranium 238 is transmitted through the entire chain of seven precursor elements or isotopes. Plutonium 239, the isotope desired in the operation of the Fermi et al. reference reactor, appears to be automatically produced by decay after the first neutron irradiation step has been carried out on uranium 238. There is, however, no teaching in the references that the irradiation of uranium in a reactor should be carried beyond this step; in fact, appellant asserts that such irradiation would not be desired in the Fermi et al. reactor since the presence of higher precursors of the chain are deleterious to the uses to which plutonium 239 produced therein was put during the war.

In order to swear back of Fermi et al., appellant submitted an affidavit under Rule 131. This affidavit asserts conception and reduction to practice of curium (curium 242) prior to December 19, 1944, the filing date of the Fermi et al. patent. The conception of curium and curium 242 was set forth in appellant's notebook in 1942 and 1943. The exhibits show the irradiation of plutonium targets with alpha particles in a cyclotron, the radioactive identification of a new radioactive isotope and its chemical identification as a new element in July and August 1944. The new isotope was thus made, and it was identified as an isotope of a new element by its radioactive and chemical characteristics. Additional work was done to establish all of the physical, radioactive and chemical properties of the new element, but there appears to have been no doubt after August 30, 1944 that the positively identified isotope was an isotope of a new transplutonic element, even though additional work was required to determine exactly which isotope it was.

The Rule 131 affidavit also shows a continuing program of work on the products of the cyclotron and neutron irradiation of plutonium during the period from July 1944 through September 1945 (just prior to the official announcement to the world in November 1945). The reported work shows extensive radioactive and chemical examination of the irradiated samples to establish the exact chemical and isotopic structure of the new isotope which had been identified as element 96.

The Rule 131 affidavit and exhibits show that appellant discovered curium and curium 242 and irradiated uranium and plutonium in nuclear reactors prior to December 19, 1944. We think, therefore, that the showing made in the Rule 131 affidavits is sufficient to overcome Fermi et al. as a reference. Cf. In re Wilkinson and Boothe, 50 CCPA 701, 304 F.2d 673.

In view of the foregoing, the rejection of process claims 28, 30 and 31 is reversed.

Reversed.

WORLEY, Chief Judge, sat but did not participate in decision.